

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed July 11, 2007                  **United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Timothy Scot Lundquist and | § | Chapter 13 |
| Lisa Carol Lundquist, | § | |
| | § | |
| Debtors. | § | Case No. 07-41353-DML-13 |

### MEMORANDUM OPINION

On April 26, 2007, the court conducted a hearing on the "*Motion to Continue the Automatic Stay*" (the "Motion") filed by Timothy Scot and Lisa Carol Lundquist (the "Lundquists"), joint-debtors in this chapter 13 case. The court heard testimony from Mrs. Lundquist and oral argument from counsel for the Lundquists and from counsel for First Horizon Home Loan Corporation (the "Mortgage Company"). Following the hearing, the parties submitted memoranda of authorities at the court's request.

This matter is subject to the court's core jurisdiction pursuant to 28 USC §§ 1334 and 157(b)(2)(F). This memorandum opinion embodies the court's findings of fact and conclusions of law. Fed. R. Bank. P. 9014 and 7052.

## I. Background

The facts that are material to this contested matter are undisputed. On March 3, 2006, the Lundquists filed their first bankruptcy case (the "First Bankruptcy"). On March 31, 2006, the case was dismissed with prejudice to refiling for 180 days because of the Lundquists' failure to file pay stubs. On April 10, 2006, the Lundquists filed a motion asking the court to vacate the order of dismissal[1] (the "Motion to Vacate"), claiming that the failure to file the pay stubs was due to either a paralegal error or computer error. On July 16, 2006, the court denied the Motion to Vacate for want of prosecution because neither a certificate of no objection nor a request for hearing was filed.

In December 2006, the Lundquists filed their second bankruptcy petition (the "Second Bankruptcy"), which was dismissed without prejudice in February 2006 for failure to file a plan or schedules. In the order dismissing the Second Bankruptcy, the court provided that any creditor could file a motion to amend the judgment asking that the dismissal be with prejudice. No such motion was filed.

On April 1, 2007, just a day after the first anniversary of the dismissal of the First Bankruptcy, the Lundquists filed the petition commencing their third (and current) bankruptcy (the "Third Bankruptcy"). On April 3, 2007, the Mortgage Company enforced its deed of trust on the Lundquists' home at a non-judicial foreclosure sale. According to the Mortgage Company's brief and statements during oral argument, the Mortgage Company believed that no automatic stay was created upon filing of the Third Bankruptcy, and thus no stay was in effect at the time of the foreclosure.

---

[1] The Lundquists titled the motion, "Motion to Reinstate Chapter 7."

On April 4, 2007, the Lundquists filed the Motion. The Mortgage Company responded, asserting that section 362(c)(3)(B),[2] providing for continuation of the automatic stay after the filing of a second bankruptcy case within one year, is inapplicable and contending that because the Lundquists had two cases pending within the year prior to filing the Third Bankruptcy, section 362(c)(4) applied and therefore no stay went into effect upon the filing of the Third Bankruptcy.

At the hearing on the Motion, based on Mrs. Lundquist's testimony and without objection from the Mortgage Company, the court concluded that the bankruptcy petition was filed in good faith, but the court took under advisement the question of whether the automatic stay went into effect upon the filing of the Third Bankruptcy petition, or had to be imposed pursuant to section 362(c)(4). The answer to this question will determine whether the foreclosure sale was in violation of an applicable stay.[3]

## II. Discussion

In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act (the "2005 Act") to address several real or perceived shortcomings of the Bankruptcy Code.[4] In particular, section 302 of the 2005 Act, entitled "Discouraging Bad Faith Repeat Filings," amended section 362(c) of the Bankruptcy Code to limit the availability of the automatic stay for repeat, bad-faith filers. If a debtor had one previous case "pending" within a year of the current filing and the case was dismissed, the automatic stay would be effective upon filing, but would

---

[2] Unless otherwise indicated, section citations refer to Title 11 of the United States Code (the "Bankruptcy Code").

[3] On May 17, 2007, the court entered an order providing that the automatic stay would apply going forward and that the Lundquists might continue to live in the home, subject to payment of their regular mortgage payments either as rent or as payments against their debt to the Mortgage Company depending on the court's determination of this issue.

[4] H. Rep. No. 109-31 Prt. 1 (2005).

expire to a certain extent after 30 days unless extended.[5] If the debtor had two or more cases "pending" within a year, that were dismissed, then the section 362(a) stay would not go into effect upon filing, but could be imposed, after notice and a hearing, upon a finding by the bankruptcy court that the latest case was filed in good faith. *See* 11 U.S.C. § 362(c)(4)(A)(i), (B).

The parties do not dispute that the Lundquists had at least one case pending within the year. However, they disagree whether the filing of a motion to vacate an order of dismissal means a case is "pending" for purposes of section 362(c) until disposition of the motion. To answer whether the section 362(a) stay went into effect upon the filing of the Third Bankruptcy, the court must determine the meaning of the word "pending" in section 362(c). Construction of the word "pending" in this context is an issue of first impression.

Section 362(c)(4)(A)(i) provides that if a case is:

"filed by or against a debtor who is an individual under this title, and if 2 or more cases were *pending* within the previous year but were dismissed, other than a case refiled under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case." (Emphasis added)

The word "pending" is not defined in the Bankruptcy Code. In cases in which no post-dismissal motions were filed, other courts have construed the meaning of the term "pending" for the purposes of section 362(c) when deciding whether a case is pending until closing or until dismissal. *See In re Easthope*, No. 06-20366, 2006 Bankr. LEXIS 826 (Bankr. D. Utah Mar. 28, 2006); *In re Williams*, No. 06-32976, 2006 Bankr. LEXIS 3980 (Bankr. E.D. Va. Nov. 22, 2006). Those courts examined the definition of "pending" in Black's Law Dictionary—"remaining

---

[5] Upon the motion of a party-in-interest, after notice and a hearing held within 30 days of filing, the court may continue the section 362(a) stay if the movant proves that the latest filing was in good faith. *See* 11 U.S.C. § 362(c)(3)(B). The party proving good faith may need to overcome a presumption that the petition was filed not in good faith. *See* 11 U.S.C. § 362(c)(3)(C). If no hearing is held or if the movant does not prove good faith, then the stay, "with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor." 11 U.S.C. § 362(c)(3)(A).

undecided; awaiting decision"—and concluded that a case is no longer pending once it is dismissed. BLACK'S LAW DICTIONARY 169 (8th ed. 2004); *see also* BLACK'S LAW DICTIONARY 1134 (6th ed. 1990)—"an action or suit is 'pending' from its inception until the rendition of final judgment." Because prior cases have uniformly held that a case is pending until it is dismissed, not closed, the Mortgage Company argues that the Motion to Vacate caused the First Bankruptcy to be pending until the court denied the Motion to Vacate on July 16, 2006. Essentially, the Mortgage Company argues that the filing of the Motion to Vacate tolled the effect of the dismissal order.

To determine whether a case is pending between the filing and disposition of a motion to vacate, the court must examine the legal effect of the filing of a motion to vacate an order of dismissal. The Motion to Vacate did not specify whether it was brought under Federal Rule of Civil Procedure 59 or 60.[6] *See* Fed. R. Bankr. P. 9023 and 9024 (respectively adopting Rules 59 and 60). However, as discussed below, neither the filing of a motion to vacate the dismissal pursuant to Rule 60(b)[7] nor a motion pursuant to Rule 59 would cause the case to be pending.

Rule 60(b) motions "do not affect the finality of a judgment or suspend its operation." Fed. R. Bankr. P. 9024. Because a case is pending until final judgment, and a Rule 60(b) motion does not affect finality, the filing of a Rule 60(b) motion does not effect the pendency of the underlying case. *See Frank v. Gulf States Fin. Co. (In re Frank)*, 254 B.R. 368 (Bankr. S.D. Tex.

---

[6] Although not denominated, the grounds pled indicate that the Motion to Vacate was a Rule 60(b) motion. Rule 60(b) motions seek to remedy incorrect rulings that are attributable to such things as mistake, inadvertence, excusable neglect, newly discovered evidence and fraud. *See* Fed. R. Bankr. P. 9024. Rule 59 motions allege such things as insufficiency of evidence to support the judgment or that the judgment was against the manifest weight of the evidence, or seek to amend the ruling. *See* Fed. R. Bankr. P. 9023.

[7] Rule 60(a) also allows a court to reconsider a judgment. However, motions pursuant to Rule 60(a) do not seek to reopen the underlying case. Instead, motions under Rule 60(a) typically correct, e.g., typographical errors. A motion brought under Rule 60(a), even if successful, would not cause the underlying case to be "pending" for section 362(c) purposes.

2000) (even if a case is successfully reinstated, a foreclosure sale that occurred between dismissal and reinstatement was not in violation of the stay, and would not be voided because the case was reinstated); *see also Lomagno v. Salomon Bros. Realty Corp. (In re Lomagno)*, 429 F.3d 16 (1st Cir. 2005) (reversal of a dismissal order on appeal does not permit the court to void a foreclosure that occurred during the pendency of the appeal, when no stay pending appeal was granted).

Nor does the mere filing of a Rule 59 motion reopen the underlying case. After the filing of a Rule 59 motion the court "*may* open the judgment." Fed. R. Bankr. P. 9023; s*ee Montelione v. Fannie Mae*, 183 Fed. Appx. 200 (3d Cir. 2006) (a creditor's motion to amend the dismissal order pursuant to Rule 59 did not reopen the underlying case). Therefore, the Mortgage Company's argument that the judicial activity involved in ruling on a motion to vacate the order of dismissal causes "pendency" is incorrect.

In order to better explain the effect of a post-dismissal motion, the court notes the general effect of a dismissal order—to restore the parties to their respective legal situations just prior to bankruptcy. *See* 11 U.S.C. § 349 (providing that the effect of a dismissal is to return the parties to status quo ante unless the court, for cause, orders otherwise); *Christie v. First State Bank of Stratford (In re Keener)*, 268 B.R. 912 (Bankr. N.D. Tex. 2001) ("the general effect of an order of dismissal is to restore the status quo ante; it is as though the bankruptcy case had never been brought"); H.R. Rep. No. 95-595, at 338 (1977); S. Rep. No. 95-989, at 48-49 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5835, 6294 (the purpose of a dismissal is to "undo the bankruptcy case, as far as practicable, and restore all property rights to the position in which they were found at the commencement of the case"); *but see In re Goldstar Emergency Med. Servs., Inc.*, 2007 Bankr. LEXIS 244 (Bankr. S.D. Tex. 2007) (noting that although circuit authority prevented a

bankruptcy court from ruling post-dismissal on a motion that was pending before dismissal, the bankruptcy court had jurisdiction to enforce an order (such as rejection of a lease) that it entered before dismissal.) The strong language regarding dismissal expressed by Congress and adopted by many courts reinforces the court's conclusion that the mere filing of a Rule 59 or 60(b) motion does not restore the pendency of the underlying case.

The court's conclusion that "pending" cases do not include dismissed cases in which a motion to vacate the dismissal order has been filed is consistent with analogous uses of the word "pending" in the Bankruptcy Code.[8] Section 109(g) creates a bar to refiling for a debtor who had a previous case "pending" within 180 days in certain circumstances. In applying that section, courts consider the date of dismissal, not the date the last motion is disposed of, as the beginning of the 180-day prejudice period. *See, e.g., In re Narod*, 138 B.R. 478 (E.D. Pa. 1992); *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860 (B.A.P. 9th Cir. 2004); *Fernandez v. GE Capital Mortg. Servs. (In re Fernandez)*, 227 B.R. 174, 178 (B.A.P. 9th Cir. 1998); *but cf. In re Snyder*, 287 B.R. 228 (Bankr. D. Mo. 2002) (relying on equitable factors to begin the period for which refiling was barred on the date the court denied a motion to vacate); *In re Moore*, 337 B.R. 79, 81 (Bankr. D.N.C. 2005) ("though there are no cases discussing whether a case remains "pending" after dismissal and before the case is closed, courts routinely calculate the 180-day period from the date of dismissal"). That the courts use the dismissal date as the effective date beginning the 180-day prejudice period indicates that they construe "pending" in section 109(g) to mean that a case is "pending" only up until dismissal, even when a motion to vacate the order of dismissal is filed.

---

[8] The court notes that some uses of the word pending are inapposite—for instance, sections 321(a)(1) and 333 use "pending" geographically, and, although for the purposes of those sections a case would arguably be pending until closed, the use pertains to *where* rather than *when* a case pends and so is not sufficiently analogous to require the court to give "pending" the same meaning in section 362(c). Likewise, sections 363 and 557(g) use "pending" to mean "awaiting"—a construction that would not make sense in section 362(c).

In some instances, the meaning of "pending" advanced by the Mortgage Company would lead to absurd results in provisions of the Bankruptcy Code that appear to call for parallel construction. For instance, section 521(f)(1) requires a debtor to file a copy of his federal tax return with the court for each tax year ending while the case is pending. However, that section should not require a debtor to file tax returns reflecting time periods after the case is dismissed even if a motion to vacate is brought by a party-in-interest.[9] Similarly, if the Mortgage Company's construction of pending is adopted in the context of sections 727(a)(12)(b), 1141(d)(5)(c), 1228(f)(2), and 1328(h)(2), arguably creditors would be able to prevent a debtor's discharge by filing motions to vacate judgments or settlements affecting the debtor's liability for debts described in section 522(q)(1)(B).

The Mortgage Company urges the court to hold that the filing of the Motion to Vacate caused the First Bankruptcy to be pending for equitable reasons.[10] First, the Mortgage Company complains that completed foreclosure sales should not be disturbed. This contention is without merit considering the volume of cases in which foreclosure sales held in violation of the stay were voided. *See, e.g., In re Hamilton*, 125 F.3d 292 (5th Cir. 1997); *Ashley Place Ass'n v. Nicholson*, No. SA-06-CV-999-XR, 2007 U.S. Dist. LEXIS 24801 (W.D. Tex. 2007); *Frank v. Gulf States Fin. Co. (In re Frank)*, 254 B.R. 368 (Bankr. S.D. Tex. 2000); *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298 (5th Cir. 2005). Moreover, because in this case there was no innocent purchaser who would be harmed by voiding the sale—the Mortgage Company bought the house and the Lundquists continue to inhabit it pending this decision—not voiding the sale would

---

[9] The court notes that motions to reconsider a dismissal may be pursued by parties other than a debtor. *See* 12 James WM. Moore el al., Moore's Federal Practice ¶ 29.05[7][b] (3d ed. 2006) (stating, without qualification, that "[l]itigants subject to adverse rulings" may file a Rule 59 or Rule 60(b) motion).

[10] The court notes that although it will address the merits of the Mortgage Company's concerns, they are not relevant to the objective determination of whether the First Bankruptcy was pending within a year of the Third Bankruptcy. These equitable concerns, are relevant, if at all, to whether the Third Bankruptcy was filed in good faith.

serve any policy of preferring finality in foreclosure. Thus, voiding the sale does not prejudice any innocent party.

Second, the Mortgage Company complains of the cost and time spent in conducting the foreclosure sale. To avoid the costs of conducting a foreclosure sale that might be void, the Mortgage Company could have clarified the status of the stay by requesting an order pursuant to section 362(j).[11] Finally, the Mortgage Company complains that it has wanted to foreclose for over a year and has been prevented by the Lundquists' successive filings. However, bankruptcy law would not have prevented the Mortgage Company from foreclosing at any time within 180 days after the First Bankruptcy was dismissed because the Lundquists were barred from filing a new petition during that time. The Mortgage Company also could have foreclosed any time after dismissal of the Second Bankruptcy and before the anniversary of the Lundquists' First Bankruptcy without worrying whether a petition might be filed to prevent the foreclosure—although the Second Bankruptcy was dismissed without prejudice, a bankruptcy filing would not have prevented foreclosure because, until April 1, 2007 (the date the Third Bankruptcy was filed), section 363(c)(4) would have applied. The Mortgage Company could have sought to amend the dismissal of the Second Bankruptcy, but it did not. Additionally, the Mortgage Company could have sought *in rem* relief from the stay.

### III. Conclusion

A case is "pending" for purposes of section 362(c) until it is dismissed, and a motion to vacate the dismissal does not extend the time that the case is "pending."[12] The Lundquists had

---

[11] Section 362(j) permits any party-in-interest to request the court to determine whether a stay is in effect. Alternatively, the Mortgage Company could have sought immediate relief from the stay. *See* 11 U.S.C. § 362(f); *see also Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 306 (5th Cir. 2005).

[12] Of course, if the case is reinstated, then it becomes pending when the order reinstating the case is entered. *Johnson v. Countrywide Home Loans (In re Johnson)*, No. 98-24882 1999, Bankr. LEXIS 849 (Bankr. W.D. Tenn. July 16, 1999).

only one case pending within the preceding year, and therefore received the benefit of the automatic stay upon the filing of the Third Bankruptcy petition. The foreclosure sale was in violation of the automatic stay and is voidable.

It is so ORDERED.

*###End of Opinion###*